# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:13CV105-RLV

| | |
|---|---|
| JEREMY R. REID, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **MEMORANDUM and OPINION** |
| ) | |
| ) | |
| DALCO NONWOVENS, LLC, ) | |
| JASON LOGAN, AND RALPH ) | |
| SHERMAN, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant Dalco Nonwovens, LLC's Motion to Strike, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, filed on January 22, 2014, and Defendant Ralph Sherman's Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed on February 14, 2014. (Docs. 17, 22.)

## I. BACKGROUND

Plaintiff, Jeremy R. Reid ("Reid"), a resident of North Carolina, alleges that Defendants Dalco Nonwovens, LLC ("Dalco"), Jason Logan ("Logan"), and Ralph Sherman ("Sherman") violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and N.C.G.S. § 143-422.2. (Doc. 3/Complaint at 1.)

Plaintiff has complied fully with all prerequisites to the jurisdiction in this Court under Title VII. (*Id*. at 2.) Jurisdiction of the Court is proper under § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3). (*Id*. at 2.)

1

The facts recited herein are taken primarily from Plaintiff Reid's Amended Complaint in accordance with the federal civil rules:

Dalco is a corporation organized under laws of North Carolina with its principal place of business located in Conover, North Carolina.[1] Defendants Logan and Sherman are both citizens and residents of Catawba County, North Carolina. (*Id*. at 2.) Logan was the production supervisor for Plaintiff's shift and Sherman was the Machine Operator working the shift immediately before Plaintiff. (*Id*.)

Plaintiff began working as a machine operator at Dalco on July 16, 2012. (*Id*.) Plaintiff alleges that on or about October 24, 2012, Plaintiff Logan had a short text message exchange during which Defendant Logan called Plaintiff a "negro" and a "nigger." (*Id*.) On October 25, 2012, and overnight into October 26, 2012, Plaintiff claims he was assaulted by Defendant Logan when his hands were slapped and his walking path was physically blocked. (*Id*. at 3.) As a result, Plaintiff filed his first EEOC charge on November 9, 2012. (*Id*.)

On November 11, 2012, two days later, the locks were cut off of Plaintiff's locker, the culprit was not identified, and despite Plaintiff's immediate report of this incident to his supervisor, the locks were not replaced for two months. (*Id*.) The following day, Defendant Sherman told Plaintiff he (Sherman) would "have to see about getting rid of [Plaintiff]." (*Id*.)

On December 30, 2012, Plaintiff's name was scratched off of his locker. (*Id*.) Later the same day, Sherman allegedly drove a forklift at Plaintiff and proclaimed that he would "run this 'boy' over," putting Plaintiff in fear for his safety. (*Id*.)

On January 10, 2013, Plaintiff was given a verbal warning for insufficient work by Defendant Dalco. (*Id*.) However, according to Plaintiff, this warning was without merit. (*Id*.)

---

[1] Defendant Dalco Nonwovens, LLC, is considered an "employer" for purposes of Title VII because it regularly employs more than fifteen employees. (Doc 3 at 1.)

While working on January 19, 2013, and into the morning of January 20, 2013, Plaintiff was assigned a workload normally managed by two employees. (*Id*.) Additionally, a fellow employee forced more bales down Plaintiff's machine, which caused the machine to jam. (*Id*.) As a result of this added pressure, Plaintiff became "emotionally distressed" and had to be sent home early. (*Id*.)

On January 23, 2013, Dalco suspended Plaintiff as a result of his work performance on January 20, 2013. (*Id*.) Dalco never asked Plaintiff to return to work since suspending him. (*Id*.) Ten days later Plaintiff filed for unemployment benefits and then filed his second EEOC charge on February 5, 2013. (*Id*.) Plaintiff claims that his treatment and his suspension were a result of retaliation because of his decision to file a discrimination charge with the EEOC. (*Id*. at 4.) Dalco claims its interpretation of Plaintiff's filing for unemployment benefits less than a week after he received his suspension letter meant that Plaintiff had voluntarily ended his employment. (Doc. 21 at 4.) Dalco disputes the notion that Plaintiff waited at least ten days before filing a claim for unemployment benefits. (*Id*.)

As a result of these alleged events Plaintiff claims that he has started smoking in excess, has suffered increased tension with his romantic relations, has increased difficulty sleeping, has suffered extreme anxiety, and worries about his future. (Doc. 3 at 5.) As such, Plaintiff requests relief in thirteen separate and distinct forms. (*Id*. at 7.)

On or about April 26, 2013, the EEOC issued Plaintiff a notice informing him of his right to sue Defendant Dalco for the acts of discrimination as alleged in the charge filed November 9, 2012. (*Id*. at 2.) On or about July 31, 2013, the EEOC issued Plaintiff a notice informing him of his right to sue Defendant Dalco for the acts of discrimination as alleged in the charge filed February 5, 2013. (*Id*. at 2.)

Defendant Dalco pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, moves to strike Paragraph 27 of the Amended Complaint arguing that it is a misrepresentation of the actual disposition of Plaintiff's application for unemployment benefits and in violation of N.C.G.S § 96-4. (Doc. 18 at 1.) Additionally Dalco moves to strike Paragraph 29(a), (b), (c), (d), (g), (h), (i), (j), (k), and (m) on the ground that those specific subparagraphs exceed the scope of Plaintiff's EEOC charge and therefore are procedurally barred. (*Id.*)

Defendant Sherman moves to dismiss Plaintiff's Amended Complaint as against Defendant Sherman in its entirety for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 22 at 1.)

Defendant Logan was served on December 2, 2013. (Doc. 10.) Logan, through counsel, obtained two extensions of time to answer or otherwise respond. (Docs. 12, 14.) However, there is no record of an Answer filed by Logan and the time to respond has expired. On February 26, 2014, counsel for Logan filed a Rule 68 Offer of Judgment on his behalf. (Doc. 23.) That filing was deleted from the docket by the Deputy Clerk because there was no indication that the Offer of Judgment had been accepted by Plaintiff. The Court is unclear where Logan stands with respect to the pending matter or why Plaintiff has not addressed the fact that Logan is possibly in default.

## II.

### A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(f) provides that "[t]he court *may* strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (2011) (*emphasis added*); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (*unpublished*) (decision to strike factual allegations from a pleading is a discretionary

one). A motion to strike, however, is a "drastic remedy" that is generally "viewed with disfavor" and "granted only for egregious [pleading] violations." *Nixon v. Majors*, No. 3:07CV413-R, 2007 WL 4592277, *3 (W.D.N.C. Dec. 28, 2007) (*citing Waste Mgmt. Holdings*, 252 F.3d at 347; *Brown v. Ins. for Family Centered Servs., Inc.*, 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005)). In order to prevail on the motion, Defendant must demonstrate that the matter at issue is both "prejudicial" and of the type "envisioned" by Rule 12(f). *Brown*, 394 F. Supp. 2d at 727 (*citations omitted*); *Godfredson v. JCB Legal Group, P.C.*, 387 F. Supp. 2d 543, 556 (E.D.N.C. 2005) (*citations omitted*).

As for a claim that portions of a pleading should be stricken because they exceed the scope of a plaintiff's EEOC charge, the claim is procedurally barred when the charge "would [not] naturally have arisen from an investigation thereof." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

### B. DISCUSSION

The Court considers whether each Paragraph identified by Defendant "would [not] naturally have arisen from an investigation thereof." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). Here, Defendant seeks to strike Paragraph 29(a), (b), (c), (d), (g), (h), (i), (j), (k), and (m).[2]

---

[2] These paragraphs allege as follows: "Defendants and Defendant Dalco's agents and/or employees discriminated and retaliated against Plaintiff in the terms and conditions of his employment on the basis of his race and color in violation of Title VII in that they, among other things: a. harassed, threatened, and humiliated Plaintiff on the basis of his race or color as specifically alleged by the facts in the above paragraphs; b. used racial epithets directed personally toward Plaintiff; c. allowed, encouraged, and/or failed to prevent hostile work environment for the Plaintiff based on his race or color; d. gave Plaintiff a greater workload than was normally handled by one worker based on his race and color and then blamed Plaintiff for not keeping up with his work; e. wrote up Plaintiff for false allegations of poor work performance and unclean work area; f. suspended Plaintiff for false allegations of poor work performance and unclean work area; f. suspended Plaintiff for the intentional sabotage by another worker on the basis of his race and color; g. cut his locker lock off and failed to provide Plaintiff with a new lock for two months; h. threatened bodily harm and put Plaintiff in fear of his safety; i. actually assaulted Plaintiff; j. threatened termination without cause; k. failed to take seriously the allegations of racism by

5

Paragraph 29(a) makes the broader racial discrimination and retaliation allegation. (Doc. 3 at 4.) Striking Paragraph 29(a) would be nonsensical in that both 29(e), which discusses discipline based upon false allegations with respect to performance, and 29(f), which discusses suspension for intentional sabotage by another worker on basis of race, would remain. Paragraphs 29(e) and (f) alone would establish the basis for an investigation that would potentially give rise to a finding such as the one stated in Paragraph 29(a).

Additionally, Paragraph (b) would naturally have arisen from an investigation into the Plaintiff's first EEOC charge filed on November 9, 2012. An investigation into Plaintiff's statement "my supervisor, Jason Logan, sent me a text message that I felt was racist" could naturally lead to a finding that racial epithets were directed personally toward the Plaintiff.

Moreover, Paragraphs (c), (d), (g), (h), (i), (j), (k), and (m) follow similar logical progressions. If the Court were to grant Defendant's Motion to Strike in its entirety, Plaintiff's First Cause of Action alleging racial discrimination and retaliation under Title VII would be stripped bare. Keeping in mind the strict standard of review, the Court has analyzed each Paragraph independently and concluded that each *could* have naturally "arisen from an investigation thereof." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (*emphasis added*). Consequently, Defendant's 12(f) Motion to Strike is **DENIED** for Paragraph 29(a), (b), (c), (d), (g), (h), (i), (j), (k), and (m).

Additionally, Defendants move to strike Paragraph 27 of the Amended Complaint, which suggests that Plaintiff was wrongfully discharged by Dalco, based on a determination by the Employment Security Commission's ("ESC's") Adjudication Unit. North Carolina law prohibits

---

Plaintiff, failing to investigate those allegations, failing to reprimand employees for the racial comments and threatening behavior against Plaintiff; l. retaliated against Plaintiff for the filing of discrimination charges with the EEOC, by, among other things, suspending him without cause and never asking him to return to work; and m. falsely claimed to the Unemployment Security Commission that Plaintiff left work when in fact he was suspended and never asked to return." (Doc. 3 at 4.)

the introduction of information about ESC proceedings in a subsequent lawsuit by prohibiting "letters, reports and other information" relating to the administration of the North Carolina Employment Security Law. *See Hartsell v. Duplex Prods. Inc.*, 895 F. Supp. 100, 103 (W.D.N.C. 1995). In the present matter, the Plaintiff is unable to use such documents to bolster his claims of action. Consequently, Defendant's 12(f) Motion to Strike is GRANTED with respect to Paragraph 27.

## III.

### A. STANDARD OF REVIEW

A Rule 12(b)(6) motion is a defense to a claim for relief and provides for dismissal where a party has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the facts alleged must be sufficient "to raise a right to relief above the speculative level" and state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 546-47, 127 S.Ct. 1955, 1964, 1960 167 L.Ed.2d 929 (2007). A district court reviewing a Rule 12(b)(6) motion "assumes all well-pled facts to be true" and "draw[s] all reasonable inferences in favor of the [non-moving party]." However, a reviewing district court comes to its own legal conclusions based on the facts and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citations and quotations omitted).

### B. DISCUSSION

The Court next considers whether Plaintiff's claims survive Rule 12(b)(6) scrutiny as to Sherman.[3]

Under Title VII, it is well established that "[e]mployees are ***not*** liable in their individual capacities for Title VII violations." *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 178 (4th Cir. 1998) (*emphasis added*). Indeed, Plaintiff Reid concedes that existing law does not support his cause of action alleging employment discrimination against Sherman. At this time, the Court is not willing to entertain Plaintiff's claim that "there is a reasonable argument for the extension, modification, or reversal of existing law." Consequently, Defendant's 12(b)(6) Motion to Dismiss is **GRANTED** as to Count One.

As with Title VII, employees are ***not*** liable for a claim of Wrongful Discharge in Violation of Public Policy in North Carolina. *See Cox v. Indian Head Indus, Inc.*, 187 F.R.D 531, 536 (W.D.N.C. 1999) (*emphasis added*). Similarly, the Court is not willing to entertain Plaintiff's claim that "there is a reasonable argument for the extension, modification, or reversal of existing law." Consequently, Defendant's 12(b)(6) Motion to Dismiss is **GRANTED** as to Count Two.

Plaintiff has alleged claims for Intentional Infliction of Emotional Distress ("IIED") against Defendant Sherman. An IIED claim requires 1) extreme and outrageous conduct by the defendant, 2) which is intended to cause and does in fact cause 3) severe emotional distress on behalf of the plaintiff. *See Waddle v. Sparks*, 414 S.E.2d 22, 27, 331 N.C. 73, 82, (1992). "Conduct is extreme and outrageous when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Guthrie v. Conroy*, 152 N.C. App. 15, 22, 567 S.E.2d 403, 408-09 (2002) (quoting *Briggs v. Rosenthal,* 73 N.C.App. 672, 677, 327 S.E.2d 308,

---

[3] Dalco and Logan do not move for dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(6).

311, *cert. denied,* 314 N.C. 114, 332 S.E.2d 479 (1985)). Severe emotional distress is, "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "It is extremely rare to find conduct in the employment context that will give rise to the level of outrageousness necessary to support a claim of [IIED]," particularly outside the sexual harassment context. *Thomas v. Northern Telecom, Inc.*, 1578 F.Supp.2d 627, 635 (M.D.N.C. 2000); *see also Frazier v. First Union Nat'l Bank*, 747 F.Supp. 1540, 1553 (W.D.N.C. 1990).

At this stage of litigation, it is the Court's view that Plaintiff has pled facts that, if analyzed with all reasonable inferences in favor of the Plaintiff, are sufficient to show conduct that is "so outrageous in character, and so extreme in degree" that it goes beyond all possible bounds of decency and is intolerable in a civilized community. Being called a "boy" and having a forklift driven towards an individual is clearly shameful behavior. These actions, coupled with Defendant Sherman threatening to get rid of Plaintiff's job just a few days prior and the subsequent incident in which Plaintiff's name was scratched off of his locker create a series of events that go beyond mere insults and indignities. These actions show a string of events where Defendant Sherman harassed Plaintiff. Perhaps more importantly, Plaintiff currently suffers from increased smoking brought on by the incident, increased tension with his romantic relations, increased difficulty sleeping, extreme anxiety, and worries about his future. At this stage of analysis it is not the duty of the Court to determine what caused Plaintiff's ailments, but it is clear that they could be a direct result of Defendant Sherman's actions. Keeping in mind the standard created by *Iqbal* and *Twombly* it is the opinion of the Court that Plaintiff has pled facts

that establish a valid IIED claim. Consequently, Defendant Sherman's 12(b)(6) Motion to Dismiss is **DENIED** as to Count Three.

A claim for Negligent Infliction of Emotional Distress ("NIED") requires the Plaintiff to establish that 1) the Defendant negligently engaged in conduct, 2) it was reasonably foreseeable that such conduct would cause the Plaintiff severe emotional distress, and 3) the conduct did in fact cause the Plaintiff severe emotional distress. *Smith-Price v. Charter Behavioral Health Syss.,* 595 S.E.2d 778, 782 (N.C. App.2004) (quoting *Johnson v. Ruark Obstetrics,* 395 S.E.2d 85, 97 (N.C.1990). A claim for *negligent* infliction of emotional distress is, therefore, subject to dismissal when "the material factual allegations charge nothing but intentional acts...." *Mitchell v. Lydall, Inc.,* 16 F.3d 410, 3 (4th Cir. 1994).

The issue that the Court must address with respect to Count Four is whether or not the actions that were taken by Defendant Sherman satisfy the first element of an NIED claim. Negligence is barely mentioned in the Amended Complaint and the actions that are described by Plaintiff appear, on their face, to be intentional. The acts, as described by Plaintiff, center on Defendant Sherman declaring that he would "run this 'boy' over" and then proceeding to drive a forklift at Plaintiff. It is the opinion of the Court that these actions are intentional, not negligent. Consequently, Defendant's 12(b)(6) Motion to Dismiss is **GRANTED** as to Count Four.

A claim of assault is established by a showing of 1) intentional acts and displays of force, 2) which caused the plaintiff reasonable apprehension of offensive contact upon his or her person. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981).

In the present matter, both elements of a civil assault have been established with "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The act of driving a forklift toward Plaintiff and stating that Defendant

was going to "run this 'boy' over" establish both required elements. Defendant Sherman's Motion to Dismiss is **DENIED** as to Count Five.

## V. CONCLUSION

Based upon the foregoing, and for all of the reasons explained in the instant Memorandum and Opinion,

**IT IS HEREBY ORDERED**, that Defendant Dalco Nonwovens, LLC's Motion to Strike is **GRANTED** in Part and **DENIED** in Part. Paragraph 27 of the Plaintiff's Compliant will be stricken by Plaintiff and a Second Amended Complaint reflecting this correction shall be filed within seven days of this Order.

**IT IS FURTHER ORDERED** that Defendant Sherman's Motions to Dismiss pursuant to Rule 12(b)(6) is **GRANTED** in Part and **DENIED** in Part. Plaintiff's statutory racial discrimination claims against Defendant Sherman are **DISMISSED**. Plaintiff's tort-based claims against Sherman alleging IIED and civil assault remain.

Signed: July 21, 2014

Richard L. Voorhees
United States District Judge